IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| RACHAEL L. WELTY, | CV  21-133-BLG-TJC |
| Plaintiff, | |
| vs. | **ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Rachael L. Welty ("Welty") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of claims for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  (Doc. 2.)  The Commissioner subsequently filed the Administrative Record ("A.R.").  (Doc. 7.)

Presently before the Court is Welty's motion for summary judgment, seeking reversal of the Commissioner's denial and remand for an award of disability benefits, or alternatively for further administrative proceedings.  (Doc. 11.)  The motion is fully briefed and ripe for the Court's review.  (Docs. 11, 13, 14.)

/ / /

1

For the reasons set forth herein, and after careful consideration of the record and applicable law, the Court hereby finds the decision should be **REVERSED** and **REMANDED** for further proceedings.

## I.     Procedural Background

Welty completed her application for SSI on April 15, 2019.[1]  (A.R. 177-79.) Welty's claim was initially denied on October 11, 2019, and upon reconsideration on April 2, 2020.  (A.R. 111-14, 118-22.)  Welty subsequently requested a hearing, which was held by telephone before Administrative Law Judge Michele Kelley (the "ALJ") on December 17, 2020.  (A.R. 33-68.)  The ALJ issued a written decision on February 18, 2021, finding Welty not disabled.  (A.R. 14-26.)  Welty requested review of the decision, but the Appeals Council denied her request on November 5, 2021.  (A.R. 1-4.)  Thereafter, Welty filed the instant action.

## II.    Legal Standards

### A.     Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the

---

[1] In addition, Welty originally completed an application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, but these claims were voluntarily withdrawn after Welty amended her alleged onset date to April 15, 2019.  (*See* A.R. 211-12.)

Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). But even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court

3

must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

### B.    Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) she suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other substantial gainful employment which exists in the national economy.  42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A).  A claimant must meet both requirements to be classified as disabled. *Id.*

The Commissioner makes the assessment of disability through a five-step sequential evaluation process.  If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)).  The five steps are:

1. Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, then the claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

## III.   The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering Welty's claim.  At step one, the ALJ found Welty had not engaged in substantial gainful activity since her amended alleged onset date of April 15, 2019.  (A.R. 17.) At step two, the ALJ found Welty had the following severe impairments: polysubstance use disorder, depressive disorder, anxiety disorder, personality disorder, post-traumatic stress disorder ("PTSD"), and attention deficit-hyperactivity disorder ("ADHD").  (*Id.*)  At step three, the ALJ found that Welty did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id.*)

Before considering step four, the ALJ determined Welty had the residual

functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following
> nonexertional limitations: the claimant is able to understand, remember, and
> carry out simple tasks.  She is able to maintain attention, concentration,
> persistence, and pace for such tasks during eight-hour workdays and 40-hour
> workweeks.  The claimant is also able to tolerate occasional interactions
> with supervisors, coworkers, and members of the public.  The claimant is
> able to tolerate usual work situations and changes in routine work settings.
> Finally, the claimant requires normal work breaks.  Normal work breaks are
> defined as breaks occurring every two hours, with two breaks lasting at least
> 10 minutes and one break lasting at least 30 minutes.

(A.R. 19-20.)

At step four, the ALJ found that Welty was able to perform her past relevant

work, as actually and generally performed, as a dietary aide and landscape laborer.

(A.R. 24.)  In addition to her past relevant work, the ALJ found that based on

Welty's age, education, work experience, and residual functional capacity, there

were additional jobs that existed in significant numbers in the national economy

that she could perform, such as a price marker/checker, laundry worker, or mail

sorter.  (A.R. 25-26.)  Accordingly, the ALJ found Welty not disabled.  (A.R. 26.)

## IV.    Discussion

Welty presents the following issues for review, whether the ALJ: (1)

properly discounted her subjective symptom testimony; (2) properly evaluated the

medical opinion of Amy Vicars, LCPC; (3) failed to consider the frequency of her

treatment; and (4) failed to incorporate all of her impairments into the vocational expert's hypothetical.  The Court will address each in turn.

## A.    Welty's Subjective Symptom Testimony

Welty argues that the ALJ improperly discounted her subjective symptom testimony without providing clear and convincing reasons for rejecting her testimony.  (Doc. 11 at 20-23.)  The Commissioner asserts that the ALJ reasonably discounted Welty's testimony because her subjective complaints conflicted with her medical records, treatment history, and activity level.  (Doc. 13 at 4-7.)

The credibility of a claimant's testimony is analyzed in two steps.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*  Second, if there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear and convincing reasons" for doing so.  *Id.*  "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'"  *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

7

undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th

Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  *See also*

*Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).  The clear and

convincing standard "is not an easy requirement to meet: [it] is the most

demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (internal quotation and citation omitted).

　　To assess a claimant's subjective symptom testimony, the ALJ may consider

(1) ordinary credibility techniques, (2) unexplained or inadequately explained

failure to seek or follow treatment or to follow a prescribed course of treatment,

and (3) the claimant's daily activities.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th

Cir. 1996); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989).  An ALJ may

also take the lack of objective medical evidence into consideration.  *Baston v.*

*Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

　　Here, the ALJ determined that Welty's medically determinable impairments

could reasonably be expected to cause her symptoms, and there is no argument that

she is malingering.  (A.R. 20.)  Therefore, the ALJ was required to cite specific,

clear, and convincing reasons for rejecting Welty's subjective testimony about the

severity of her symptoms.  The Court finds the ALJ failed to do so.

　　Although the ALJ does not discuss the nature of Welty's impairments in any

detail, she accurately notes that Welty's primary issues involve her anxiety,

depression, and PTSD symptoms.  (A.R. 20, 54.)  The ALJ found, however, that

Welty's statements "concerning the intensity, persistence and limiting effects of

[her] symptoms [were] not entirely consistent with the medical evidence."  (A.R.

20.)  But the ALJ did not identify what statements or testimony she found not

credible and what evidence undermines Welty's complaints.

Instead, the ALJ first references two function reports completed by Welty in

2019 and 2020.  (A.R. 20.)  The ALJ points out that Welty reported difficulty

bending, reaching, and sitting in 2019, while she did not report difficulty in these

areas in 2020.  (*Id.*)  But these physical limitations are not relevant to, and do not

contradict, Welty's testimony regarding her mental health impairments.  Welty

does not allege disability based on any impairment in her ability to bend, reach, or

sit.  As the ALJ determined, all of Welty's relevant impairments relate to mental

health conditions, and her testimony and statements regarding her mental health

issues are not inconsistent with the information she provided in the 2019 and 2020

function reports.  (*See, e.g.*, A.R. 240, 243-46, 270, 275-77.)

The ALJ also found that Welty's subjective complaints were not entirely

consistent with the objective medical evidence.  (A.R. 21.)  Again, however, the

ALJ does not identify which of Welty's subjective complaints are inconsistent with

the medical evidence.  Rather, the ALJ cites to a plethora of progress notes from

Welty's counseling sessions in 2018-2020 which, according to the ALJ, record

"nearly identical examinations" of intact cognitive functioning, abnormal mood and affect, intermittently interactive interpersonal functioning, and variably impaired functional status.  (A.R. 21.)  The ALJ contrasts these notes with Welty's medication management visits and other medical records with "normal" examinations.  (A.R. 21.)  From this, the ALJ concludes that Welty's subjective complaints are not consistent with "the normal medication management examinations and the other observations of cooperative attitude, normal judgment, intact cognitive functioning, and adequate grooming and hygiene." (*Id.*)  But the findings and observations made by Welty's counselor in progress notes are not Welty's statements or testimony; they are the observations of Welty's counselor. The ALJ does not explain how these observations, or the findings of other providers, are inconsistent with Welty's statements or testimony.[2]

---

[2] Additionally, the ALJ's conclusion that the entries in the progress notes are nearly identical is not entirely accurate.  Given the chronic nature of Welty's mental health issues, it would not be surprising to see some consistency in her presentation for her counseling appointments.  Nevertheless, Welty's cognitive functioning was variously described by her counselor as intact, oriented and alert (A.R. 683, 687, 689) and preoccupied (A.R. 707, 709, 964, 988); her mood was described as abnormal, appropriate (A.R. 683, 686, 765, 791, 899), and depressed (A.R. 683, 686); her affect was described as abnormal, calm (A.R. 988), labile (A.R. 687, 691) and anxious and depressed (A.R. 687, 691, 765); her interpersonal functioning was described as intermittently interactive, interactive (A.R. 950) and impaired (A.R. 954, 960, 958); and her functional status was described as variably impaired and impaired (A.R. 954, 960, 958).

Moreover, the ALJ only references the initial "patient presentation" section of the counselor's progress notes, and does not consider or discuss the remainder of these records, which include discussions of Welty's symptoms, medications, interventions, diagnosis, goals and objectives, and treatment plan.  A review of these records demonstrates they are consistent with Welty's testimony.  For example, Welty testified at her hearing that she does not go out or socialize because she gets "bad anxiety dealing with people."  (A.R. 46.)  She said if she goes shopping and there are too many people she will "just leave [her] cart and walk away."  (A.R. 47.)  She further explained, "the people around me, just lots of talking.  People moving around me, it makes me very – very anxious. . . . I just can't deal with a lot of that.  And then, I feel like people are looking at me and then judging me."  (*Id.*)  A review of Welty's counseling, medication management, and primary care notes are consistent with Welty's testimony.  (*See, e.g.*, A.R. 721 ("She was feeling depressed again about everything."); 749 ("The client reports negative thinking patterns have gotten worse.  She has been beating herself up to the point where she doesn't want to leave the house."); 751 ("She is struggling with her depression and anxiety.); 757 ("Unfortunately, she has been depressed and anxious lately and has difficulty standing up for herself.  She appears to be withdrawing from life."); 819 ("She has found that the anxiety and depression has gotten acutely worse."); 875 ("Currently her depression and anxiety is not

controlled, she has daily symptoms that are affecting her functional abilities."); 876 (psychiatric examination noting "daily anxiety and increased depression symptoms," decreased motivation, and increased social isolation); 955 ("The client reports having a lot of difficulty lately with leaving the house due to her anxiety."); 991 ("She is having difficulty leaving the house due to anxiety."); 1125, 1138, 1142 (noting increased problems with anxiety).)

The ALJ further found that Welty's ability to be a stay-at-home mother of her two children, prepare meals, perform household chores, collect crystals, and have a socially distanced birthday party for her son to be inconsistent with her allegations of disability.  (A.R. 22.)  Again, the ALJ does not identify what household activity is inconsistent with any of her testimony, and it is not clear to the Court how any of these activities discredit Welty's testimony.  Welty's ability to care for her children or perform household chores does not contradict her testimony regarding the nature and extent of her mental health impairments.

Last, the ALJ determined that Welty's subjective complaints were not consistent with "the conservative treatment history and the evidence of sustained sobriety with medication and counseling."  (A.R. 22.)  For one, the Court is puzzled how Welty's sustained sobriety contradicts, in any way, her symptoms. As for Welty's treatment history, it is accurate that in January 2019 she had not been taking antidepressants for about a year, but she started antidepressants again

at that time because her symptoms had returned.  (*See* A.R. 557, 559.)  After doing so, her symptoms did not improve.  In October 2019, for example, she followed up with her doctor and her medications were changed because her anxiety and depression had gotten "acutely worse."  (A.R. 819-21.)  Her medications were subsequently changed and adjusted multiple times, and her provider documented difficulty in finding an effective treatment.  (*See* A.R. 818, 875-77, 878-80.)  The ALJ does not explain why this course of treatment contradicts any of Welty's testimony.

For the foregoing reasons, the Court finds the ALJ's decision to discredit Welty's testimony was not properly supported.  The ALJ offered various reasons for discounting her testimony, but they fall far short of clear and convincing reasons required.  The ALJ did not identify what testimony was not credible and what evidence undermines Welty's complaints.  Thus, the ALJ's findings are insufficient to allow the Court to determine she "did not arbitrarily discredit claimant's testimony."  *Turner*, 613 F.3d at 1224 n.3.

## B.    The ALJ's Evaluation of Medical Opinion Evidence

Welty next argues that the ALJ failed to properly evaluate the opinions of counselor Amy Vicars ("Vicars"), a Licensed Clinical Professional Counselor.[3]

---

[3] Several times in her brief, Welty argues that the ALJ failed to give proper weight to the opinions of her "treating physicians and healthcare providers," but she does not identify the providers or the opinions that were allegedly improperly

(Doc. 11 at 6.)  The Commissioner asserts that the ALJ appropriately considered Vicars' opinions.  (Doc. 13 at 10.)

Because Welty applied for benefits after March 27, 2017, the ALJ considered the medical evidence under a new set of regulations governing the evaluation of medical opinion evidence.  20 C.F.R. pts. 404, 416.  The new regulations eliminated the use of the term "treating source" and eliminated the traditional hierarchy between treating, examining, and non-examining physicians. *Id.*  Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . ." 20 C.F.R. §§ 404.1520c(a); 416.920c(a).  The ALJ is directed to consider medical opinions or prior administrative medical findings together according to the following factors: supportability, consistency, relationship with the claimant, specialization, and other factors such as the medial source's familiarity with other evidence in the claim or understanding of the disability program requirements.  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).  The two most important factors are supportability and consistency, and the ALJ must explain how those factors were considered in the decision.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ is generally not required to explain how the remaining

discounted.  (*See* Doc. 11 at 6, 8, 9, 25.)  Vicars is the only provider referenced by name.  The Court will, therefore, discuss only the ALJ's consideration of Vicars' opinions.

14

factors were considered, except when deciding among differing, yet equally persuasive opinions or findings on the same issue. *Id.*

The Ninth Circuit has determined that these revised regulations are irreconcilable with its prior cases affording deference to the opinions of treating physicians, and with the requirement that the ALJ provide specific and legitimate reasons for rejecting the opinions of a treating physician. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Under the new regulations the "ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

Nevertheless, the ALJ cannot reject a medical opinion "without providing an explanation supported by substantial evidence." *Id.* at 792. Such an explanation must "'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Id.* "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id.* at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

Under the revised regulations, "[a] medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether

you have one or more impairment-related limitations or restrictions" in your work-related abilities.  §§ 404.1513(a)(2), 416.913(a)(2).  A medical source "means an individual who is licensed as a healthcare worker by a State . . . ."  §§ 404.1502(d), 416.902(i).  Vicars is a Licensed Clinical Professional Counselor.  In Montana, professional counselors are mental health professionals that require licensure.  *See* Montana Code Annotated §§ 27-1-1101(3); 37-23-201 to 213 (2021).  Accordingly, Vicars is a medical source and the ALJ was required to articulate how she considered Vicars' opinions.

Vicars prepared a function report dated March 4, 2020, outlining her assessment of Welty's condition.  (A.R. 259.)  The ALJ found the report to be unpersuasive.  (A.R. 23.)  The ALJ first states that the physical limitations in the report are not supported by Vicars' counseling notes.  (*Id.*)  This appears to be a reference to a check-box section of the report titled "Information About Abilities," in which Vicars checked that Welty's impairments affect lifting, squatting, bending, standing, reaching, and stair climbing.  (*See* A.R. 264.)  Vicars also checked the boxes for memory, completing tasks, concentration, following instructions, and getting along with others.  (*Id.*)  Below the checked boxes, Vicars wrote, "she has back problems that affect physical activity.  Her mental health issues make it difficult to complete complex tasks, concentrate at times, follow complex instructions and stress affects her relationships."  (*Id.*)

16

It is true that, as a clinical counselor, Vicars' notes do not focus on physical limitations; Vicars was not treating Welty for a musculoskeletal condition. As previously discussed, however, Welty's primary impairments involve her mental health symptoms, and Vicars' function report and her progress notes focus on those impairments. In fact, in responding to another inquiry on the function report form requesting identification of the conditions that limit Welty's ability to work, Vicars specified "concentration, mental confusion, decreased stamina/fatigue, stress intolerance, and memory loss." (A.R. 259.) Any impairment in Welty's ability to lift, squat, bend, stand, reach, and climb stairs is largely irrelevant to the question of her disability due to mental health conditions.

Next, the ALJ finds Vicars' progress reports, documenting difficulties with memory, completing tasks, concentration, following instructions, and getting along with others, "were seemingly copied forward and do not contain observations that would support the reported difficulties . . . ." (A.R. 23.) Again, the ALJ appears to focus solely on the "patient presentation" section of the record without engaging in a review of the substance of the treatment note. A review of the remainder of Vicars' treatment notes are entirely consistent with her report of Welty's difficulties with memory, completing tasks, concentration, following instructions, and getting along with others. (*See, e.g.*, A.R. 719, 735, 775 (working on communication skills with her husband); 785, 925 (noting increased memory loss);

17

957 ("The client is worried about many things on this day.  Her head is spinning and she is having difficulty keeping on one subject for long.").)  Therefore, contrary to the ALJ's findings, Vicars' counseling notes contain observations that support Welty's reported difficulties.

The ALJ also states that Vicars' findings of impairment in memory, completing tasks, concentration, following instructions, and getting along with others, were inconsistent with "normal examinations" reported by other providers. (A.R. 23.)  In support, the ALJ focuses on records from Welty's medication management provider, and other exams conducted in 2019 and 2020, in which Welty was observed with "a cooperative attitude" and "normal judgment."  (*Id.*) As to the medical management provider, a form progress note was utilized by the provider that had an entry for "memory – normal," which could either be checked "Y" or "N."  The entry was consistently checked "Y," but no further findings were made in any of the notes regarding an evaluation or assessment of Welty's memory.  There are also no findings in the medical management provider's progress notes relative to any of the other mental impairments noted by Vicars.

With respect to the "inconsistent" examinations conducted in 2019 and 2020, the ALJ refers to treatment notes from Welty's primary care provider, Garett Williams, MD.  The physical examination section of those notes generally document Dr. Williams' findings that Welty was cooperative, with normal

judgment, linear thought process, and adequate grooming and hygiene.  (*See, e.g.*, A.R. 876.)  But he makes no findings with respect to Welty's memory and ability to complete tasks, concentrate, follow instructions, or get along with others that are inconsistent with Vicars' evaluation.  In fact, Dr. Williams also documents in the physical examination section of the progress notes that Welty was suffering from depression, anxiety, social isolation, and has high levels of irritability and a short temper.  (A.R. 876, 879.)  He also diagnosed her with a major depressive disorder and chronic PTSD, and he struggled to find an effective antidepressant agent to control her symptoms.  (A.R. 559, 818, 877, 880.)  Thus, Dr. Williams' findings are not inconsistent with Vicars' assessment of the limitations posed by Welty's social anxiety, depression, and PTSD.

Last, the ALJ found the Vicars' report unpersuasive because it "does not contain a specific statement about what a claimant can still do despite her impairments" or about specific impairment-related limitations or restrictions.  (A.R. 24.)  But this is not accurate.  Vicars reports, for example, that Welty has impairment-related limitations in her ability to complete complex tasks and follow complex instructions.  (A.R. 264.)  She also notes that it is difficult for Welty to follow written instructions, but that she can do so with help.  (*Id.*)  In addition, she explained that Welty "has a low stress tolerance and difficulties handling any high stress situation or changes" and that changes in routine "causes her intense stress

and she shuts down." (A.R. 265.) These limitations comment directly on Welty's mental ability to perform work activities such as carrying out instructions and responding appropriately to work pressures. *See* 20 C.F.R. §§ 404.1513(a)(2)(ii), 416.913(a)(2)(i)(B).

In sum, the Court finds the ALJ failed to provide substantial evidence for rejecting Vicars' opinions. The ALJ focuses on isolated entries in the record, but the reasons provided for discounting Vicars' opinions are not supported by consideration of the record as a whole.

### C.    Frequency of Treatment

Welty also argues the ALJ improperly ignored Social Security Rulings ("SSR") 96-8p, which requires consideration of the effects of the claimant's medical treatment on the RFC by incorporating the frequency and duration of treatment, and SSR 16-3p, which also requires consideration of treatment for pain and other symptoms.

SSRs 96-8p and 16-3p require the ALJ to consider the effects of medical treatment in developing the RFC. SSR 96-8p, 61 Fed. Reg. 34474-01, 1996 WL 362207; SSR 16-3p, 2017 WL 5180304. SSR 96-8p requires the RFC assessment to be based on all relevant evidence, such as "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." SSR 96-

8p, 61 Fed. Reg. at 34477.  SSR 16-3p relates more specifically to symptom

evaluation, and requires that treatments received for pain or other symptoms be

considered in evaluating the intensity, persistence, and limiting effects of an

individual's symptoms.  SSR 16-3p, 2017 WL 5180304, at *8.

An ALJ's failure to consider the effect of a claimant's treatment needs may

constitute reversible error.  *See Bourcier v. Saul*, 856 Fed. App'x 687, 691 (9th Cir.

2021); *Edmunds v. Kijakazi*, 2021 WL 4452762, at *6 (D. Mont. Sept. 29, 2021);

*Jones v. Kijakazi*, 2022 WL 595729, at *4 (D. Mont. Feb. 28, 2022); *Chase v. Saul*,

2022 WL 819680, at *7-8 (D. Mont. Mar. 18, 2022); *Mariah v. Saul*, 2021 WL

1660947, at *8 (D. Mont. Apr. 28, 2021).

Here, Welty asserts she averaged 4.5 visits per month.  (Doc. 11 at 15.)  But

Welty does not cite to any medical opinions stating that she would be absent from

work due to medical visits.  Further, there is no evidence that Welty would be

required to attend medical appointments during work hours, or that her

appointments would require her to miss an entire day of work.  While Welty did

attend weekly counseling sessions and monthly sessions at Community Medical

Services, there is no evidence that these sessions could not be held outside of work

hours.

Thus, to the extent the ALJ erred in failing to specifically consider treatment

needs, any such error was harmless.  "To show that an ALJ's error was not

harmless, a claimant must demonstrate a 'substantial likelihood of prejudice.'" *Mariah*, 2021 WL 1660947, at *8. Welty has not done so here. She does not cite to any evidence in the record that these absences would prevent competitive employment or cite to any medical source opinion that she would frequently miss work due to medical appointments or treatment needs. Therefore, the Court cannot find a substantial likelihood of prejudice, and any error in failing to consider treatment needs was harmless.

### D.   Vocational Expert's Hypothetical

Finally, Welty argues the ALJ failed to incorporate all her impairments and limitations into the hypothetical questions posed to the vocational expert. (Doc. 11 at 28.)

Hypothetical questions posed to the vocational expert must set out all of the claimant's limitations and restrictions. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value. *Embrey*, 849 F.2d at 422.

Welty argues that the hypothetical the ALJ relied on to find she could perform work was deficient because it did not incorporate all of her impairments and limitations.  As discussed above, the Court has determined the ALJ erred in discrediting Welty's subjective symptom testimony and failed to properly consider Vicars' opinions.  This error may have infected the hypothetical the ALJ relied on, and in turn, the ALJ's determination that Welty could perform past relevant work.

The Court, therefore, finds the ALJ's determination at step four is not supported by substantial evidence.

## V.    Remand or Reversal

Welty asks the Court to remand this case for proper consideration of her impairments and credibility, the medical evidence, and vocational evidence, or alternatively for a remand for an award of benefits.  "[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court."  *Reddick*, 157 F.3d at 728.  If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal [and an

23

award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds remand for further proceedings is appropriate.  On remand, the ALJ shall properly evaluate Welty's subjective symptom testimony and Amy Vicars' medical opinions, and reconsider whether Welty can perform work in the national economy based upon a hypothetical that incorporates all of her impairments and limitations supported by the record.

## VI.    Conclusion

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision be **REVERSED** and this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 14th day of March, 2023.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge